# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WEIDERT, | ) 1:06-CV-0459 AWI SMS HC |
| Petitioner, | ) |
| v. | ) FINDINGS AND RECOMMENDATION |
| | ) REGARDING RESPONDENT'S MOTION |
| | ) TO DISMISS |
| JAMES YATES, Warden, et al., | ) [Doc. #10] |
| Respondents. | ) |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, following his conviction in 1981 of first degree murder. See Petition at 1. Petitioner was sentenced to serve an indeterminate term of 25 years to life with possibility of parole. Id.

On November 28, 2005, Petitioner filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of California, Sacramento Division. By order of the Court dated April 21, 2006, the matter was transferred to the Fresno Division and received in this

Court. In the instant petition, Petitioner claims he was denied his due process rights under the Constitution when the Board of Prison Terms ("BPT") refused to grant Petitioner parole for a third time. Petitioner argues the BPT's decision was not supported by the evidence and was wrongfully based unchanging factors. According to the petition, Petitioner fully exhausted his claim in the California courts. On January 30, 2006, Respondent filed a motion to dismiss the petition for lack of subject matter jurisdiction. On March 1, 2006, Petitioner filed an opposition to Respondent's motion to dismiss.

## DISCUSSION

A.  Procedural Grounds for Motion to Dismiss

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a respondent can file a motion to dismiss after the court orders a response, and the Court should use Rule 4 standards to review the motion.  See Hillery, 533 F. Supp. at 1194 & n. 12.

In this case, Respondent's motion to dismiss is based on a lack of subject matter jurisdiction. Because Respondent's motion to dismiss is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default and Respondent has not yet filed a formal answer, the Court will review Respondent's motion to dismiss pursuant to its authority under Rule 4.

B.  Jurisdiction

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004); Sass v. California Board of Prison Terms, 376 F.Supp.2d 975, 978 (E.D. Cal. 2005); see 28 U.S.C. § 2254(a) (This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

Petitioner contends that his federal constitutional rights were violated when the BPT refused to grant a parole date for the third time. He alleges the decision was made without any evidentiary support. He further contends that the language of the California parole statutes creates a presumptive entitlement to, and thus has a liberty interest in, the setting of a parole release date. Respondent moves for summary dismissal alleging Petitioner has no protected liberty interest in parole, thus arguing that the Court is without jurisdiction to entertain this matter. Because Petitioner is challenging the actions of a state, the Court will proceed under the Fourteenth Amendment.

The Fourteenth Amendment provides that "[no] State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1.  In certain cases, a state law may create a liberty interest protected by the Constitution. In examining questions of procedural due process, federal courts employ a two-step inquiry: 1) whether there exists a liberty or property interest which has been interfered with by the State, Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); and 2) whether the procedures attendant upon that deprivation were constitutionally sufficient, Hewitt v. Helms, 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), *receded from and rejected on separate grounds*, Sandin v.

1  Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). See Kentucky Dept. of Corrections
2  v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

3       Thus, the first question that must be answered is whether there exists a liberty interest
4  protected by the Due Process Clause. The United States Supreme Court has expressly denied
5  entitlement to a protected liberty interest in parole. Greenholtz v. Inmates of Nebraska Penal and
6  Correctional Complex, 442 U.S. 1, 7 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ("There is no
7  constitutional or inherent right of a convicted person to be conditionally released before the
8  expiration of a valid sentence."). "Nevertheless, early release statutes can create a 'liberty interest
9  protected by due process guarantees.'" Bermudez v. Duenas, 936 F.2d 1064, 1067 (9th Cir.1991) (per
10 curiam), *quoting* Greenholtz, 442 U.S. at 12; Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).
11 Moreover, "[a] state may create a constitutionally protected liberty interest by establishing regulatory
12 measures that impose substantive limitations on the exercise of official discretion." Bermudez, 936
13 F.2d at 1067, citing Baumann v. Arizona Dep't of Corrections, 754 F.2d 841, 844 (9th Cir.1985).
14 However, no protected entitlement to release exists unless a state scheme includes a formula which
15 mandates release after the occurrence of specified events. Baumann, 754 F.2d at 844 (stating that the
16 unique "shall/unless" formula was decisive in Greenholtz). If there exists mandatory language in a
17 parole statute, then Petitioner has a protected liberty interest in parole release. Greenholtz, 442 U.S.
18 at 11-12. If, however, the state merely holds out the possibility of parole, then such a hope is not
19 protected by due process. Id.; Baumann, 754 F.2d at 844. Therefore, the Court must look to the
20 California parole statutes to determine whether the unique structure and language of those statutes
21 creates an entitlement to parole release or a presumption of expectation of parole release.

22      The relevant California statutory language is contained in Cal. Penal Code § 3041, which
23 states, in relevant part:

24     (a) One year prior to the inmate's minimum eligible parole release date a panel of two or
       more commissioners or deputy commissioners shall again meet with the inmate and *shall*
25     *normally set a parole release date* as provided in Section 3041.5.

26     (b) The panel or the board, sitting en banc, *shall set a release date unless it determines* that
       the gravity of the current convicted offense or offenses, or the timing and gravity of current or
27     past convicted offense or offenses, is such that consideration of the public safety requires a
       more lengthy period of incarceration for this individual, and that a parole date, therefore,
28     cannot be fixed at this meeting . . . .

Cal. Penal Code §§ 3041(a), 3041(b) (West 2000) (Emphasis added).

The language in Cal. Penal Code § 3041 provides for the possibility of parole. A release date *shall* be set *unless* the BPT determines that the prisoner should not be released. The word "shall" is not used in an absolute or mandatory sense. Sass, 376 F.Supp.2d at 981. It is qualified or modified in both subsections. Thus, parole is not automatic; it is discretionary. Nevertheless, the Ninth Circuit Court of Appeals, without the assistance of a definitive California Supreme Court interpretation, found the language in § 3041 to be mandatory. See McQuillion v. Duncan, 306 F.3d 895 (9th Cir.2002).

In 2005, in In re Dannenberg, 34 Cal.4th 1061, 1087 (2005), the California Supreme Court provided a definitive interpretation of § 3041's structure and language. In Dannenberg, the California Supreme Court held: 1) the language in § 3041 is not mandatory; 2) there is no right to parole in California; 3) the Board of Prison Terms has extremely broad discretion and is not required to fix a parole date; and 4) the statutory scheme of § 3041 indicates that § 3041(b) extinguishes any expectancy an inmate may have in parole found in § 3041(a). Dannenberg, 34 Cal.4th at 1084, 1087-88, 1097-98; Sass, 376 F.Supp.2d at 981.

This Court is therefore faced with conflicting interpretations from the Ninth Circuit and the California Supreme Court. Normally, the Court would defer to the Ninth Circuit's interpretation of the state statute; however, circuit opinions are only persuasive authority. Clark, 331 F.3d at 1069; Duhaime, 200 F.3d at 600-01. On the other hand, "[w]hen a state court has made its own definitive determination as to the meaning of a state statute, federal courts give this finding great weight in determining the natural effect of a statute, and if it is consistent with the statute's reasonable interpretation, it will be deemed conclusive." Sass, 376 F.Supp.2d at 982, *citing* Gurley v. Rhoden, 421 U.S. 200, 208, 95 S.Ct. 1605, 44 L.Ed.2d 110 (1975); see also Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989) (Federal courts are bound by state court rulings on questions of state law). As noted by this Court in Sass, the general principle of deference to state court interpretations is compelled by the Supreme Court's clearly established habeas corpus jurisprudence. See, e.g., Greenholtz, 422 U.S. at 12, *citing* Bishop v. Wood, 426 U.S. 341, 345, 346 n.10, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (demonstrating deference to, and the need

for, holdings and interpretations of state supreme courts when establishing interests protected by due process); Allen, 482 U.S. 369, 377 n.8, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987) (implying that a Montana Supreme Court decision would have been instructive if there had been one on point).

Therefore, this Court will defer to the California Supreme Court's interpretation of § 3041 in Dannenberg. The California Supreme Court answers the first question: the language of § 3041 is not mandatory. Dannenberg, 34 Cal.4th at 1087-88. The absolute sense of the word "shall" is eviscerated by the modifications ("shall *normally* set") and qualifications ("shall . . . *unless it determines*") contained in the subsection. Cal. Penal Code §§ 3041(a), 3041(b) (West 2000) (Emphasis added). Furthermore, "the lack of mandatory language in § 3041, especially when considered in light of 1) California's long standing jurisprudence denying the existence of a parole right, 2) the statutory scheme of § 3041, and 3) the broad discretion given to the BPT under the "noncapital murderers" exception to California's determinant sentencing law, precludes a legitimate expectation of parole release and, thus, does not give rise to an associated liberty interest under clearly established federal law." Sass, 376 F.Supp.2d at 982-983, *citing* Dannenberg, 34 Cal.4th at 1084, 1087-88, 1097-98. Therefore, as this Court held in Sass, "the unique structure and language of § 3041 precludes the finding of a federal liberty interest in parole." Sass, 376 F.Supp.2d at 983.[1] Consequently, the state court determination that Petitioner's federal due process rights were not violated at his May 31, 2001, parole hearing was not contrary to or an unreasonable of clearly established federal law. 28 U.S.C. § 2254(d). In addition, because California's parole statutes do not give rise to a protected liberty interest, this Court is without jurisdiction to entertain Petitioner's claims. For this reason, Respondent's motion should be granted and the petition should be dismissed.

C. Review in light of Supreme Court's Analysis in Sandin v. Conner

Respondent further claims Petitioner has no protected liberty interest in parole under the analysis presented by the Supreme Court in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132

---

[1] Petitioner argues that Judge Morrison England has since reconsidered his opinion in Sass in the case of Bair v. Folsom State Prison, 2005 WL 3081634 (E.D. Cal. 2005). However, Petitioner is mistaken. Judge England adopted the Report and Recommendation of Magistrate Judge Gregory Hollows in full on November 16, 2005. In his Report and Recommendation, Magistrate Judge Hollows specifically recommended "that the petition be denied pursuant to Sass." See Bair v. Folsom State Prison, 2005 WL 2219220, *1 (E.D. Cal. 2005).

1  L.Ed.2d 418 (1995). In <u>Sandin</u>, the Supreme Court held that "States may under certain circumstances
2  create liberty interests which are protected by the Due Process Clause." 515 U.S. at 483-84. To
3  determine whether there is a state-created liberty interest, the Court must inquire whether the state
4  action "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary
5  incidents of prison life." <u>Id</u>. at 484. As noted by this Court in Sass, however, <u>Sandin</u> "is by no means
6  clearly established in the context of parole rights." <u>Sass</u>, 376 F.Supp.2d at 980. In <u>Sandin</u>, the
7  Supreme Court determined whether a prisoner's rights were violated in the context of his conditions
8  of confinement, not the possibility of his release from that confinement. <u>Sandin</u>, 515 U.S. at 480-81.
9  In addition, <u>Sandin</u> did not overrule <u>Greenholtz</u> or <u>Allen</u>. <u>Id</u>. at 483 n.5. Accordingly, <u>Greenholtz</u> and
10 <u>Allen</u> remain controlling law in the context of determining whether Petitioner has a liberty interest in
11 parole. Indeed, the Supreme Court has cited <u>Greenholtz</u> and <u>Allen</u> approvingly following <u>Sandin</u> as
12 examples of cases where state statutes have created liberty interests through the use of mandatory
13 language. See <u>I.N.S. v. St. Cyr</u>, 533 U.S. 289, 345-46, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).
14 Therefore, the analysis set forth in <u>Sandin</u> is inapplicable in the context of parole rights.

15     In any case, Petitioner does not have a protected liberty interest even if <u>Sandin</u> were applied.
16 As correctly noted by Respondent, every California prisoner serving an indeterminate prison term is
17 subject to the statutory maximum term unless the BPT fixes a shorter term. See <u>Dannenberg</u>, 34
18 Cal.4th at 1097-98. Therefore, the BPT's denial of parole cannot possibly impose an "atypical or
19 significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515
20 U.S. at 484. Consequently, California's parole statutes do not give rise to a protected liberty interest
21 under the Supreme Court's test in <u>Sandin</u>.

**RECOMMENDATION**

23     Accordingly, the Court HEREBY RECOMMENDS that Respondent's motion to dismiss for
24 lack of subject matter jurisdiction be GRANTED and the petition for writ of habeas corpus be
25 DISMISSED.

26     This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United
27 States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule
28 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of

1  California.

2       Within thirty (30) days after being served with a copy, any party may file written objections
3  with the court and serve a copy on all parties.  Such a document should be captioned "Objections to
4  Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and
5  filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.  The
6  Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The
7  parties are advised that failure to file objections within the specified time may waive the right to
8  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

9  IT IS SO ORDERED.

10 **Dated:     May 24, 2006**                             **/s/ Sandra M. Snyder**
    icido3                                                    UNITED STATES MAGISTRATE JUDGE